Morris Joseph **LUCARIO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–82–0659–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 22, 1983.

Randy Schaffer, Houston, for appellant.

J. Sidney Crowley, Houston, for appellee.

Before JACK SMITH, BASS and DUGGAN, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from a conviction of engaging in organized criminal activity in violation of § 71.02(a)(1), Tex.Penal Code Ann. (Vernon Supp.1983). The State abandoned two enhancement allegations pursuant to a plea bargain, and the appellant, after pleading guilty, was sentenced by the court to sixteen years confinement.

In four grounds of error, the appellant alleges: (1) the trial court erred in overruling his motion to quash the indictment; (2) the organized criminal activity statutes are unconstitutionally vague and overbroad; (3) the statutes violate the due process clause of the United States Constitution; (4) the appellant should have been prosecuted for more specific offenses.

By his first ground of error, the appellant alleges that the trial court erred in overruling his motion to quash the indictment. The motion alleged that the indictment failed to give the appellant adequate notice of the allegations against him because it contained words of multiple statutory meaning. The words specifically complained of were: "person", "bodily injury", "theft", "robbery", and "aggravated robbery".

▮▮▮ The appellant now urges that the indictment should have specifically alleged the manner and means of committing aggravated robbery. He states that the indictment alleged as the manner and means of committing aggravated robbery that he acted "while in the course of committing theft". He contends that this phrase includes actions taken during, (1) an attempt to commit theft; (2) while in the course of committing theft; and (3) in immediate flight after the commission of theft. He asserts that the indictment should have specifically alleged one of these three courses of conduct rather than the general allegation that the appellant "acted while in the course of committing theft". He cites *Gorman v. State,* 634 S.W.2d 681 (Tex.Cr.App. 1982), and *Ferguson v. State,* 622 S.W.2d 846 (Tex.Cr.App.1981), for the proposition

that, where the alleged conduct of the accused is statutorily defined in more than one way, the State must allege which manner it intends to prove, when a timely motion to quash is filed.

*Ferguson* and *Gorman* are distinguishable from the instant case because the offenses alleged in those cases did not involve an underlying offense. *Ferguson* involved delivery of heroin and *Gorman* involved theft. The instant case is based on the offense of engaging in organized criminal activity which involved the underlying offense of aggravated robbery. Further, the underlying offense of aggravated robbery also involved the additional underlying offense of theft.

It is not necessary, even when a motion to quash is presented, to specifically allege the manner and means of acting in the course of committing theft in an indictment for aggravated robbery. *Linville v. State,* 620 S.W.2d 130 (Tex.Cr.App.1981); *Garcia v. State,* 595 S.W.2d 533 (Tex.Cr.App.1980). Since the Court of Criminal Appeals has held that the facts of an underlying offense need not be specifically alleged, the appellant's assertion that the facts of the offense underlying the underlying offense must be specifically alleged is without merit.

By his next ground of error, the appellant alleges that his conviction is void because sections 71.01 and 71.02 are unconstitutionally vague and overbroad. He contends that: (1) the scienter element of the statutes fail to provide adequate notice of what conduct is criminal; (2) the statutes do not require that a person know that his actions are aiding an unlawful combination; (3) the statutes allow a prosecutor to act with unbridled discretion in determining whether to prosecute persons for organized criminal activity as opposed to the predicate offense; (4) the statutes contain no guidelines to determine the point at which "participation" in a combination is distinguished from incidental assistance.

The appellant relies upon *State v. Young,* 62 Ohio St.2d 370, 406 N.E.2d 499, *cert. denied,* 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980). In *Young,* the Ohio

Supreme Court struck down the Ohio Organized Crime Statute as unconstitutionally vague and overbroad on the identical grounds asserted in the appellant's four contentions. The appellant urges that the *Young* decision is persuasive authority because he asserts that the Ohio and Texas Statutes are similar.

In this connection the appellant contends that a holding that Sections 71.01 and 71.02 are unconstitutional will not prohibit the State from prosecuting persons for the underlying predicate offenses.

The Texas Court of Criminal Appeals has set forth certain guidelines to establish standards for determining vagueness and overbreadth in statutes. In *Goocher v. State,* 633 S.W.2d 860 (Tex.Cr.App.1982), the court held that a statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute, and if it encourages arbitrary and erratic arrests and convictions. The Court held in *Floyd v. State,* 575 S.W.2d 21 (Tex. Cr.App.1978), *appeal dism'd,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979), that the law must be sufficiently definite in that its terms and provisions may be known, understood, and applied; otherwise, it is void and unenforceable. But, it has also held, that a clear and concise statute may, nevertheless, be overbroad if it reaches constitutionally protected conduct. *Parr v. State,* 575 S.W.2d 522 (Tex.Cr.App.1979). However, the Court has held that a statute is not necessarily rendered unconstitutionally vague merely because certain words or terms are not specifically defined. *Powell v. State,* 538 S.W.2d 617, *cert. denied,* 429 U.S. 928, 97 S.Ct. 334, 50 L.Ed.2d 298 (1976).

### The Texas Statute

The Texas Organized Crime Statute contains the following provisions:

(a) "Combination" means five or more persons who collaborate in carrying on criminal activities, although:

(1) participants may not know each other's identity;

(2) membership in the combination may change from time to time; and

(3) participants may stand in a wholesaler-retailer or other arm's length relationship in illicit distribution operations.

(b) "Conspires to commit" means that a person agrees with one or more persons that they or one or more of them engage in conduct tht would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties.

[added by Acts 1977, 65th Leg., p. 922, ch. 346, § 1, eff. June 10, 1977]

§ 71.02  Engaging in Organized Criminal Activity

(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the following:

(1) murder, capital murder, arson, aggravated robbery, robbery, burglary, theft, aggravated kidnapping, kidnapping, aggravated assault, or forgery;

(2) any felony gambling offense;

(3) promotion of prostitution, aggravated promotion of prostitution, or compelling prostitution;

(4) unlawful manufacture, transportation, repair, or sale of firearms or prohibited weapons;

(5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug, or unlawful possession of a controlled substance or dangerous drug through forgery, fraud, misrepresentation, or deception;

(6) any unlawful wholesale promotion or possession of any obscene material or obscene device with the intent to wholesale promote the same; or

(7) any unlawful employment, authorization, or inducing of a child younger than 17 years of age in an obscene sexual performance.

Tex.Penal Code Ann. §§ 71.01 & 71.02(a) (Vernon Supp.1983).

### The Ohio Statute

The Ohio Statute contained the following provisions:

(A) No person, with purpose to establish or maintain a criminal syndicate or to facilitate any of its activities, shall do any of the following:

(1) Organize or participate in organizing a criminal syndicate or any of its activities;

(2) Provide material aid to a criminal syndicate or any of its activities, whether such aid is in the form of money or other property, or credit;

(3) Manage, supervise, or direct any of the activities of a criminal syndicate, at any level of responsibility;

(4) Furnish legal, accounting, or other managerial services to a criminal syndicate;

(5) Commit, or conspire or attempt to commit, or act as an accomplice in the commission of, any offense of a type in which a criminal syndicate engages on a continuing basis;

(6) Commit, or conspire or attempt to commit, or act as an accomplice in the commission of, any offense of violence;

(7) Commit, or conspire or attempt to commit, or act as an accomplice in the commission of bribery . . . .

(B) Whoever violates this section is guilty of engaging in organized crime, a felony of the first degree.

(C) As used in this section, "criminal syndicate" means five or more persons collaborating to promote or engage in any of the following on a continuing basis:

(1) Extortion or coercion . . . ;

(2) Compelling or promoting prostitution, or procuring . . . ;

(3) Any theft offense . . . ;

(4) Any gambling offense . . . ;

(5) Illegal trafficking in drugs of abuse, in intoxicating or spirituous liquor, or in deadly weapons . . . ;

(6) Lending at usurious interest, and enforcing repayment by illegal means;

(7) Any offense, for the purpose of gain.

(D) A criminal syndicate retains its character as such even though one or more of its members does not know the identity of one or more other members, and even though its membership changes from time to time.

Ohio Rev.Code Ann. § 2923.04 (1979).

A reading of these statutes discloses that the Ohio Statute is more broad than the Texas statute and obviously prohibits constitutionally protected activity. For example, a person who unknowingly provides legal or accounting services to a syndicate could be prosecuted. *See,* Ohio Rev.Code Ann. § 2923.04(A)(4). There is no provision that the person must know of the alleged criminal activity by the syndicate. By contrast, the Texas Statute forbids only criminal activity which occurs in the context of establishing, maintaining or participating in a combination.

▮ The appellant alleges that the *mens rea* required by the Texas Statute fails to meet the constitutional requirement that persons of ordinary intelligence be given notice that their conduct is criminal. He contends that lawful activities performed by fiduciaries or employees of a combination will be subject to punishment due to the lack of a requirement that their actions further the illegal activities of the combination.

He also alleges that the scienter element is vague because it does not require that a person be aware that his activities are in aid of a combination. He argues that innocent persons who are unaware that the organization with which they are involved is engaging in illegal activities may be prosecuted under the statute.

An innocent person who works for an organization, unaware of the criminal activities, cannot be prosecuted under Section 71.02. The *mens rea* requirement may include employees or fiduciaries of a combination who are unaware of the combination's

criminal activities; however, these persons may not be prosecuted unless their actions fall within the proscribed, specifically delineated acts. In other words, the *mens rea* and the *actus reus* of this crime must coincide before a person can be prosecuted under Section 71.02. For example, a food wholesaler who sells food to a restaurant operated by a criminal combination has not violated the statute because the act of selling food is not proscribed by the statute.

Furthermore, the definition of a combination requires that the group of persons involved "collaborate" in carrying on a criminal activity. The scienter element of the offense requires that a person intend to establish, maintain, or participate in a group which collaborates in carrying on a criminal activity. The meaning of the words "establish", "maintain" and "participate", of necessity require knowledge of the thing to be established, maintained, or participated in. The scienter element of the statute requires that the actor know of the criminal activity of the group.

Whether the establishment, maintenance, or participation in the profits of a combination require knowledge of a criminal activity may be a closer question. However, since the statute reaches only those persons who engage in criminal acts with the intent to participate in the profits of a combination, the statute does not prohibit constitutionally protected conduct and is not unconstitutionally vague.

■ The appellant further contends that Section 71.01 does not contain a guideline to determine the point at which "participation" in a combination is distinguished from incidental assistance. He asserts that "participation" is not defined and thus the statute does not give notice regarding the activity which it prohibits.

The appellant's contention appears to confuse an element of *mens rea* with the *actus reus* of the crime. The word "participate" is used only in that portion of the statute which delineates the required mental state, i.e., "the intent to establish, maintain or participate in . . .". The portion of the statute which delineates the *actus reus*

element of the crime uses the verbs "commits or conspires to commit". "Conspires to commit" is defined as an agreement with one or more persons to engage in conduct which would constitute the offense and the performance of an overt act in pursuance of the agreement. § 71.01(b). This definition is not vague and gives notice of the point at which incidental assistance of a combination becomes a conspiracy to commit an act prohibited by the statute.

■ The appellant's final contention under this ground of error is that section 71.02 gives the prosecutor unbridled discretion to choose whether to prosecute a person for the promotion of prostitution as a misdemeanor or a felony. He contends that this statute gives the prosecutor the same extensive discretion regarding the manufacture, transportation, repair, or sale of a switchblade, knife, or knuckles. *See & Compare*, Tex.Penal Code Ann. §§ 43.03(b), 46.06(e) and § 71.02. In *Young, supra,* the Ohio Court found similar discretion under the Ohio Statute to be unconstitutional.

As we have previously noted, the Ohio Statute is much broader than the Texas Statute. The Texas Statute limits the prosecutorial discretion, in that unless the defendant has committed or conspired to commit the enumerated acts with the intent to establish, maintain or participate in a combination or in the profits of a combination, he may not be prosecuted for a felony. A felony conviction under these circumstances requires proof of the existence of the combination as defined by the statute as well as proof that the defendant acted with the requisite mental state. Only where these elements are shown may a felony prosecution for these acts be maintained. Thus, the prosecutor does not have unbridled discretion.

The appellant's second ground of error is overruled.

■ By his next ground of error, the appellant alleges that Section 71.02 violates due process because it provides more severe punishment for the planning of an offense than other Penal Code statutes provide for

a completed offense. He argues that the punishment for a conspiracy between four people to commit a robbery is ten years confinement under §§ 15.01(d), 15.02(d) and 29.02(b) of the Penal Code. If the robbery is completed, those persons are subject to 20 years confinement under § 29.02(b) of the Penal Code. In comparison, the appellant points out, that where five persons conspired to commit a robbery, they are subject to 20 years confinement under § 71.02(c), and if they actually complete the robbery, the maximum sentence is 99 years to life under § 71.02(b).

The appellant claims that this punishment scheme is not rationally related to the conduct of the accused and is violative of due process of law. He cites no Texas precedential authority to support his position; however, he argues as persuasive authority two Illinois Supreme Court decisions which held two punishment schemes to be unconstitutional *People v. Bradley,* 79 Ill.2d 410, 38 Ill.Dec. 575, 403 N.E.2d 1029 (1980); *People v. Wagner,* 89 Ill.2d 308, 60 Ill.Dec. 470, 433 N.E.2d 267 (1982). In *Bradley,* the court held that a statute which imposed a greater penalty for possession of drugs than for delivery was not rationally related to the legislative policy. In *Wagner,* the court held that the statute which punished delivery of an uncontrolled substance, where it was represented to be a controlled substance, more severely than delivery of a controlled substance, was violative of the Illinois Constitutional guarantee of due process.

The present case is distinguishable from the Illinois cases. The Texas Statute punishes the conspiracy to commit or the actual commission of a crime more severely where it occurs in the context of organized crime than where the crime is committed outside a criminal organization context. What the statute seeks to punish is not the predicate crime, but the commission of a predicate crime by a criminal organization. The fact that the punishments imposed under Section 71.02 are harsher than the punishment imposed for identical activity which does not occur through an organized effort, reflects the legislature's recognition that organized criminal activity is more dangerous to the welfare of the State than unorganized criminal activity.

The United States Supreme Court's decisions upholding the Texas habitual offender statutes are more analogous to the circumstances presented by the instant case than the Illinois cases. In those cases the Court held that the habitual offender statute did not violate due process of law and did not constitute cruel and unusual punishment. The court found that the statutes reflected the legislature's legitimate concern regarding the danger imposed, by recidivists, to the welfare of the citizens of the State of Texas. Thus, the habitual offender statute was held not to violate due process or constitute cruel and unusual punishment. *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

In the instant case, the legislature's intent to punish organized criminal activity more severely than random crime is a legitimate means of protecting the welfare of Texas citizens. The appellant's third ground of error is overruled.

■ The appellant's final ground of error is that he should have been prosecuted for attempted aggravated robbery or for conspiracy to commit aggravated robbery, rather than the more general offense of engaging in organized criminal activity. He contends that where a person may be prosecuted under either a general statute or a specific statute, the State must prosecute under the specific statute. He cites *Ex parte Harrell,* 542 S.W.2d 169 (Tex.Cr.App. 1976).

The appellant's argument assumes that the statutes regarding attempt and conspiracy govern the same subject matter as does the organized criminal activity statute. This is a false assumption. Section 71.02(b) requires proof that five or more persons collaborated in carrying on criminal activities. This is the threshold element of the organized criminal activity statute. The attempt and criminal conspiracy statutes do

not contain this element. Even if these statutes should be construed to govern the same subject matter, the rule that a person should be prosecuted under a specific, rather than a general statute, does not apply to this case. The rule does not apply where the general statute was enacted after the specific statute, because it is manifest that the legislative intent is that the general statute prevail. *Ex parte Harrell, supra;* Tex.Rev.Civ.Stat.Ann. art. 5429b–2, § 3.06 (Vernon Supp.1983). The appellant's final ground of error is overruled.

The judgment of the trial court is affirmed.